In the Matter of the Estate of EDWARD D. G. PRIME, Deceased.

When a statute amends a former statute " so as to read as follows," it operates as a repeal by implication of inconsistent provisions in the former law and of provisions therein omitted in the latter.

When the amendatory act re-enacts provisions in the former law, either *ipsissimis verbis* or by the use of equivalent though different words, the law will be regarded as having been continuous, and the new enactment, as to such parts, will not operate as a repeal, so as to affect a duty accrued under the prior law, although, as to all new transactions, the later law will be referred to as the ground of obligation.

Accordingly *held*, that the act of 1891 (Chap. 215, Laws of 1891), which amends, " so as to read as follows," the first section of the Collateral Inheritance Act of 1885 (Chap. 483, Laws of 1885), as amended in 1887 (Chap. 713, Laws of 1887), did not operate to prevent the subsequent assessment and collection of a tax on the estate of a decedent, who died intermediate the act of 1887, and that of 1891.

The act of 1890 (Chap. 553, Laws of 1890), amending, " so as to read as follows," the provision of the act of 1889 (§ 1, chap. 191, Laws of 1889), in relation to certain corporations organized for other than business purposes, which amendment exempts the religious, charitable and other corporations named therein from general taxation on personal property, and from the Collateral Inheritance Act, applies only to domestic corporations.

| | |
|---|---|
| 136 | 347 |
| 136 | 374 |
| 136 | 347 |
| 137 | 88 |
| 137 | 408 |
| 136 | 347 |
| 140 | 575 |
| 136 | 347 |
| 141 | 484 |
| 136 | 347 |
| 144 | 133 |
| 136 | 347 |
| 150 | 206 |
| 136 | 347 |
| 166 | 91 |
| 136 | 347 |
| 172 | ²431 |

Accordingly *held*, that foreign religious and charitable corporations were not exempted from the payment of a legacy tax.

Also *held*, that the act of 1887 (Chap. 376, Laws of 1887), conferring upon the American Board of Commissioners for Foreign Missions a limited privilege of taking and holding real and personal property in this state, did not relieve it from such a tax.

A state statute granting powers and privileges to corporations, in the absence of plain indications to the contrary appearing on the face of the act, applies only to corporations created by the state.

Reported below, 64 Hun, 50.

(Argued November 29, 1892; decided January 17, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made April 14, 1892, which affirmed an order of the surrogate of the county of New York, assessing and fixing the collateral inheritance tax under the will of Edward D. G. Prime, deceased.

The facts, so far as material, are stated in the opinion.

*Ralph E. Prime* for appellant. Testator died April 7, 1891, and no appraisement was made and no tax was assessed or fixed until October 12, 1891, but on the previous April 20, 1891, the act of 1891 was passed, by which act the first section of the before existing act (the only section imposing a tax) was " amended to read as follows." Appellants claim, that the amendment was a repeal of the old first section of the law, and the enactment of a new section in its place, not retroactive, and hence, that in October, 1891, when the appraisement was made and the tax was fixed and assessed by the surrogate, there was no law in existence which authorized a tax on a legacy which passed upon a death which occurred April 7, 1891. (*In re Vassar*, 127 N. Y. 8; *In re McPhirson*, 104 id. 321.) A statute which imposes a tax, or a penalty, or a forfeiture, but which is repealed before actual assessment or final recovery, does not authorize assessment of the tax, or the recovery of the penalty or the forfeiture. (*In re Cayuga*, 46 Hun, 659; *In re Miller*, 110 N. Y. 224.) The amendment of a statute, " to read as follows" does not work a repeal and immediate re-enactment of same words found in both. The

unchanged and retained words are not thus repealed. (*Ely v. Holton*, 15 N. Y. 598, 600; *In re Miller*, 110 id. 216; *In re Arnett*, 49 Hun, 603.)

*Austin Abbott* for appellant. The tax imposed by the Collateral Inheritance Act is special and not general, and must be strictly construed against the state. (*In re Vassar*, 127 N. Y. 1.) The provisions of the act of 1890, exempting bequests to missionary societies from the legacy tax, apply in favor of this appellant. (Laws of 1890, chap. 553; *People ex rel. v. Maxwell*, 94 N.. Y. 179; *Newell* v. *People*, 7 id. 9; *People* v. *Purdy*, 2 Hill, 31; *People* v. *H. S. M. Co.*, 105 N. Y. 155; *Chamberlain* v. *Chamberlain*, 43 id. 434; *In re Butler*, 58 Hun, 400; *McIntyre* v. *Z. C. Co.*, 9 Ohio, 203; *People* v. *Farnham*, 35 Ill. 562.) The act of 1890 is not in its primary object a tax law; and is not in anywise subject to the rule that exemptions in tax laws are to be strictly construed against those claiming to be exempt. (Laws of 1891, chap. 215.)

*William H. Arnoux* for appellant. It is a general rule of legal construction applicable to special statutes for taxation that only those things are taxable who are included in both the letter and spirit of the act. (*Hubbard* v. *Brainard*, 35 Conn. 563; *People ex rel. v. Davenport*, 91 N. Y. 676; *U. S.* v. *Wiggliworth*, 2 Story, 269; *Warrington* v. *Furber*, 9 East, 242; *Gurr* v. *Scudds*, 11 Exch. 190; *Stetson* v. *Kempton*, 13 Mass. 272; *State* v *Ross*, 24 N. J. L. 497; *Johnson* v. *Lexington*, 14 B. Mon. 521.) The state of New York has lawful power and authority to confer upon foreign corporations the right to take and hold real and personal property in this state, and to limit the amount and the income derived therefrom, and such authority can be exercised either by special or general law. (Laws of 1877, chap. 376; Laws of 1890, chap. 553; *Hollister* v. *Drew Sem.*, 95 N. Y. 175.) By a proper interpretation of the act of 1890 (chap. 553, p. 977), every nonbusiness corporation is included in its operation both to hold and enjoy property, and to be exempt from the collateral inheritance

tax, whether such corporation is domestic or foreign. (*Stewart* v. *L. V. R. R. Co.*, 38 N. J. L. 505.) The act of 1889, as amended in 1890, is in its general effect a negative statute, and is, therefore, of universal application. (Laws of 1850, chap. 172; *People ex rel.* v. *Wood*, 71 N. Y. 267; *People* v. *Davenport*, 95 id. 585.) The Collateral Inheritance Tax Law is to be construed as if so much of the act of 1890 as relates to corporate exemption therefrom had been embodied therein, and by such construction foreign non-business corporations are exempt from such tax. (*In re Stewart*, 131 N. Y. 280; *In re Enston*, 113 id. 174.)

*David B. Hill, Edgar J. Levey* and *Emmet R. Olcott* for respondents. The amendatory law (Chap. 215, Laws of 1891) did not repeal by implication the provisions of chapter 713, Laws of 1887. (*Warrimer* v. *People*, 6 Dem. 216; *In re Arnett*, 49 Hun, 599; *H. I. Co.* v. *Alger*, 54 N. Y. 173; *Ely* v. *Holton*, 15 id. 595; *Moore* v. *Mausert*, 49 id. 332; *Croswell* v. *Crane*, 7 Barb. 195; *People* v. *Harris*, 123 N. Y. 73; *Roberts* v. *Fohrs*, 36 Ill. 268; *Kesler* v. *Smith*, 66 N. C. 154; Sedg. on Stat. Const. 197; Sutherland on Stat. Const. 336; *Case of Yates*, 4 Johns. 359; *Theriat* v. *Hart*, 2 Hill, 380; *Burnham* v. *Stevens*, 33 N. H. 247; *Sheffield* v. *Lovering*, 12 Mass. 492; *Douglas* v. *Douglas*, 5 Hun, 140; *Conger* v. *Barker*, 11 Ohio [N. S.], 1; *Denwell* v. *Baldwin*, 80 N. Y. 610.) Even under the assumption that section 1, chapter 215, Laws of 1891, did operate as a repealing section, the vested right of the state to a tax once accrued would not have been lost. (*In re Kemeys*, 56 Hun, 119; *Sherrill* v. *Christ Church*, 121 N. Y. 701; *In re Vassar*, 127 N. Y. 8; *Moore* v. *Kenockee*, 75 Mich. 332; *King* v. *U. S.*, 99 U. S. 229; *In re Howard*, 5 Dem. 483; *Wallace* v. *Myers*, 38 Fed. Rep. 184; *Strode* v. *Comm.*, 52 Penn. St. 181.) Foreign charitable and religious corporations are not exempt from the collateral inheritance tax. (*In re McCloskey*, 22 Abb. [N. C.] 20; *In re Stewart*, 131 N. Y. 282; *B. C. Cemetery* v. *City of Buffalo*, 46 id. 506; *Chegaray* v. *Mayor, etc.*, 13 id. 220; *R. Hospital*

v. *Mayor, etc.*, 84 id. 115; *People ex rel.* v. *Comrs.*, 82 id.
465; *P. Bank* v. *Billings*, 4 Pet. 561; Sutherland on Stat.
Const. 286; *L. T. P. Makers* v. *Woodruffe*, 7 B. & C. 838;
*People ex rel.* v. *Potter*, 47 N. Y. 375; *Smith* v. *People*, Id.
330; *Delafield* v. *Brady*, 108 id. 568; *People ex rel.* v.
*Comrs.*, 95 id. 554, 558; *Estate of Ticknor*, 13 Mich. 44;
chap. 319, Laws 1848; 7 R. S. 1701; chap. 51, Laws 1870;
chap. 641, Laws 1881; chap. 88, Laws 1885; chap. 191, Laws
1889; chap. 553, Laws 1890; *In re Vassar*, 127 N. Y. 10;
Cooley on Tax. 202; *In re McCloskey*, 6 Dem. 438.) No
special exemption can be claimed in behalf of the American
Board of Commissioners for Foreign Missions by reason of the
provisions of chapter 376, Laws of 1877. (*Merrick* v. *Sant-
voord*, 34 N. Y. 218; *Stevens* v. *P. Co.*, 41 id. 152; *Green* v.
*Van Buskirk*, 7 Wall. 150.)

ANDREWS, Ch. J.   Edward D. G. Prime, a resident of this
state, died in the city of New York on the 7th day of April,
1891, leaving a will of real and personal property. By his
will he gave certain legacies to collateral relatives and to three
sisters of his wife, and also to two foreign corporations, the
Presbyterian Board of Relief for disabled ministers and the
American Board of Commissioners for Foreign Missions,
the former a Pennsylvania and the latter a Massachusetts
corporation.   His residuary estate, consisting of personal
and real property within this state, was given to collateral
relatives.

Under proceedings instituted in the Surrogate's Court of the
city of New York June 5, 1891, an appraiser was appointed
under the act chapter 483 of the Laws of 1885, as amended by
chapter 713 of the Laws of 1887, and chapter 215 of the
Laws of 1891, and such proceedings were had that on the
12th day of October, 1891, an order of the surrogate was
made assessing and fixing a tax upon the several legacies and
upon the interest of the residuary legatees and devisees under
the will at the rate of five per cent on the amount of the
legacies and the value of the residuary estate.   This appeal

is taken by the individual legatees and devisees and by the corporations named, from the order of the General Term affirming the order of the surrogate.

There are two questions in the case, one of which is common to all the appellants, and one which pertains to the two corporations alone. The general question is presented by the claim on the part of the appellants, that the only statute in force at the time of the institution of proceedings for assessing the tax, in June, 1891, imposing a legacy tax, was the act chapter 215 of the Laws of 1891, which amended the first section of the act of 1885, as amended by the act of 1887, by declaring that said first section was amended "to read as follows," and then proceeded to recite the first section as amended. The act of 1891 did not in terms repeal the corresponding section in the former acts. The section as amended embodied the same principle in respect to the taxation of what for brevity may be called collateral inheritances, as did the corresponding section in the former acts, and made no change in the rate, but in prescribing the rule it does not follow the exact language of the prior acts.

The claim as we understand it is that a statute which amends a prior statute in some particulars under the formula, " so as to read as follows," operates as a repeal of the whole prior statute, unless provisions intended to be retained are incorporated in the amended statute in the precise words of the former statute, without change of phraseology, and that it makes no difference although the same provision in substance is contained in the amending, as in the original statute, nor although the transposition and collocation of words in the amending act was for the purpose of adjusting the new features brought in by the amendment so as to make the new and the old provisions harmonious in their relation and expression. Starting with this premise, it is then claimed that the first section of the act of 1887 having been repealed by implication, without saving to the state the right to proceed under the prior law to assess and collect the tax on estates of decedents who died prior to the passage of the act of 1891, there

was no law when the assessment in this case was made author-
izing such assessment.   No assessment it is insisted could be
made at that date under the law of 1887, because the first sec-
tion of that act (the one imposing a tax) had been repealed by
the act of 1891, before any fixed right of the state to assess
and tax the estate in question had accrued, and no assessment
could be made under the act of 1891, because that act was.
prospective and applies only to cases where death occurred
subsequent to its passage.

By this process of reasoning it is sought to establish that the
tax in this case was unauthorized, and although it is admitted
that if the act of 1887 had remained in force, or if the dece-
dent had died after the passage of the act of 1891, or if the
language of the first section of the act of 1887, as to the taxa-
tion of collateral inheritances, had been incorporated *ipsissimis
verbis* in the act of 1891, the interests in question would have
been taxable, yet it is insisted that the right to tax has been
lost by the lack of verbal identity between the two sections.

We think the contention upon this point has no support in
authority or reason.   The appellants rely upon the language
of DENIO, J., in *Ely* v. *Holton* (15 N. Y. 595), in which case
there was under consideration an amendment to one of the
sections of the Code, which re-enacted the original section " to
read as follows," but added a new provision giving a right of
appeal where none existed before, which new right was invoked
by a party whose rights had been concluded before the amend-
ment, according to the prior law.   It was held that a party so
situated was not entitled to the new privilege.   Judge DENIO,
in the course of his opinion, speaking of the effect of such
amendatory statutes said: " The portions of the amended sec-
tions, which are merely copied without change, are not to be
considered as repealed and again enacted, but to have been the
law all along ; and the new parts or the changed portions are
not to be taken to have been the law at any time prior to the
passage of the amended act."   The language " copied without
change" is relied upon as indicating that it is only where there
is verbal identity between the language in the first act and that

of the second act, that the amended act will be deemed a con-
tinuation of the former act, and that it is not sufficient to
prevent a repeal by implication that the provisions are identi-
cal in substance.    The learned judge used language appropriate
to the case before the court, but the general principle enforced
by the decision cannot have so narrow and confined an appli-
cation as is now claimed.

It is very plain that the legislature, which had established a
new policy in the taxation of the right of devolution or suc-
cession, and was year by year perfecting the system and
enlarging its scope and efficiency by new legislation, never
intended to repeal the prior acts in these respects in which the
new enactment corresponded in meaning with the prior law,
so as to exempt from taxation, estates or interests in course
of settlement, but where the tax had not yet been levied.
It is obvious that the main purpose of the act of 1891 was to
add a new class of taxable estates exempted by the former
law, and to this extent there was a repeal of the inconsistent
provision of the former acts.    In recasting the section much
of the language of the act of 1887 is repeated, sections are
transposed, and in respect to the tax on collateral interests the
rule is expressed in slightly different language, but with no
change in substance.    The distinction sought to be made
between this case and the principle decided in *Ely* v. *Holton*
(*supra*) is narrow, technical and illogical.    The appellants
refer in support of this contention to the case of *Nash* v.
*White's Bank of Buffalo* (105 N. Y. 245).    In that case the
subsequent act, which was held to be a repeal of the former
one, changed and increased the penalty prescribed by the first
act for taking unlawful interest, and expressly repealed " all
acts and parts of acts inconsistent therewith," and it was prop-
erly held that this terminated proceedings under the prior law.
The case of *Comm.* v. *Herrick* (6 Cush. 465) resembles
much more nearly the case before us.    The defendant had
been convicted of selling spirituous liquors contrary to law,
and a motion was made in arrest of judgment on the ground
that the statute under which the defendant had been convicted

had been since repealed. The repeal was claimed to have been effected by the statute of 1853, which amended the former law by inserting the word "intoxicating" in place of the word "spirituous." The court (SHAW, C. J.), after noting the fact that the penalty had not been changed, proceeded to inquire as to the intent of the legislature, and said : "It is very manifest that it was not the intention to put an end to the operation of the former act; on the contrary, they intended that it should continue in operation under a modification. Their intention, manifestly, was not to take away, diminish or alter the penalties in existing cases, but to bring another class of cases within the operation of the act, not included before. So far as this did include new cases, it was a new law." He then proceeded to show that the word "intoxicating" included "spirituous" liquors, and, therefore, that there had been no moment from the time the offense was committed that the law was not in force punishing the offense of retailing spirituous liquors, and the motion was denied. We conceive the general rule to be that when a statute amends a former statute "so as to read as follows," it operates as a repeal by implication of inconsistent provisions in the former law, and of provisions omitted in the amended law. Where the amended act re-enacts provisions in the former law, either *ipsissimis verbis* or by the use of equivalent, though different words, the law will be regarded as having been continuous, and the new enactment as to such parts will not operate as a repeal so as to effect a duty accrued under the prior law, although, as to all new transactions, the later law will be referred to as the ground of obligation. (See *Moore* v. *Mausert*, 49 N. Y. 332 · *People* v. *Supervisors*, 67 id. 109.)

The conclusion we have reached makes it unnecessary to consider the point whether, if the act of 1891 repealed the first section of the act of 1887, the repeal operated to prevent the subsequent assessment and collection of a tax on the estate of decedents, who died intermediate the act of 1887 and the act of 1891.

The more interesting question, and the one of greater

importance from the larger interests involved in its determination, arises on the appeal of the charitable corporations. It is claimed that they are exempted from a legacy tax under the law of 1891, by the act chapter 553 of the Laws of 1890. Under the act of 1887, legacies to charitable and religious corporations, whether domestic or foreign, were not exempt from the collateral inheritance tax. This was adjudged in the case of *Catlin* v. *Trustees of Trinity College & ano.* (113 N. Y. 133). In that case two legacies were in question, one to a church in Poughkeepsie, and one to Trinity College, Hartford, Conn. The act of 1887 limited the general words in the first section of the act, subjecting "all property" passing by will or upon intestacy to the tax, by exempting property so passing to certain near relatives, and property passing to "societies, corporations and institutions now exempted by law from taxation." It was claimed in the *Catlin* case that the legacies there in question were within the exemption of the act of 1887, for the reason that the personal property of a college or religious corporation was exempt from taxation under the provision of the Revised Statutes (1 R. S. 388, § 4, subd. 7), exempting from taxation "the personal property of every incorporated company not made liable to taxation on its capital in the fourth title of this chapter." It was held that religious and charitable corporations were not exempted from general taxation under this provision of the Revised Statutes, and there being no other statute under which exemption from general taxation was claimed, the court affirmed the judgment sustaining the tax.

The provision in the act of 1891 as to exemptions of corporations from the collateral inheritance tax is the same as in the act of 1887, except that the words "or from collateral inheritance tax" were added. It is obvious that the corporations now claiming exemption from the legacy tax must be able to point to some statute of this state antedating the assessment of the legacy duty, which exempts foreign religious and charitable corporations from taxation generally, or specially from taxation under the inheritance tax law. There was no such statute in existence when the *Catlin* case was decided, and if

it is to be found, it must have been enacted between 1887 and the time of the assessment of the taxes in question, in 1891.

It is conceded by the appellants that no exemption from a legacy duty upon legacies to foreign religious and charitable corporations exists unless given by the act chap. 553, of the Laws of 1890, but it is claimed, and the claim has been enforced by most elaborate argument of counsel, that that act does exempt from the operation of the inheritance tax law all charitable and religious corporations, foreign or domestic, whether created by the laws of this state or the laws of any other state or government. The respondents contend that the act of 1890 applies to domestic corporations only, and that foreign corporations of the class mentioned in the act are not entitled to the benefit of its provisions. The decision of the question as to the validity of the legacy tax imposed on the legacies to the foreign corporations turns upon this controversy.

The act chap. 553 of the Laws of 1890, is entitled "An act to amend chapter one hundred and twenty-one of the Laws of eighteen hundred and eighty-nine, entitled 'An act to limit the amount of property to be held by corporations organized for other than business purposes,' and relating to such corporations." It amends the several sections of the former act "so as to read as follows:" "SECTION 1. Any religious, educational, bible, missionary, tract, literary, scientific, benevolent or charitable corporation, or corporation organized for the enforcement of laws relating to children or animals, or for hospital, infirmary, or other than business purposes, may take and hold, in its own right or in trust for any purpose comprised in the objects of its incorporation, property not exceeding in value three million dollars, or the yearly income derived from which shall not exceed two hundred and fifty thousand dollars, notwithstanding the provisions of any special or general act heretofore passed or certificate of incorporation affecting such corporations. In computing the value of such property, no increase in value arising otherwise than from improvements made thereon shall be taken into account. The personal estate of such corpora-

tions shall be exempt from taxation and the provisions of chapter four hundred and eighty-three of the laws of eighteen hundred and eighty-five, entitled 'An Act to tax gifts, legacies and collateral inheritances in certain cases,' and the acts amendatory thereof, shall not apply thereto, nor to any gifts to any such corporation by grant, bequest or otherwise; provided, however, that this provision shall not apply to any moneyed or stock corporation deriving an income or profit from the capital or otherwise, or to any corporation which has the right to make dividends or to distribute profits or assets among its members. § 2. This act shall not affect the right of any such corporation to take and hold property exceeding in value the amount specified in section one of this act, provided such right is conferred upon such corporation by special statute; nor affect any statute by which its real estate is exempt from taxation. § 3. This act shall take effect immediately."

The act of 1889, of which the act above quoted is an amendment, contained no provision exempting the corporations named therein from taxation, either general or special. The sole purpose of the original enactment was, as the title indicates, to fix a limit within which corporations of the classes mentioned should be permitted to take and hold property. This legislation was the culmination of a policy, which had steadily been pursued through successive acts of legislation, to remove the close restrictions originally imposed upon the power of such corporations as to the amount of property which they should be permitted to take and hold. The act permitted such corporations to hold property not exceeding two million dollars or property the yearly income from which shall not exceed one hundred thousand dollars. The changes effected by the amendment of 1890, were (1) the inclusion of other corporations of a charitable character in the enumeration; (2) the extension of the limit of property from two to three million dollars, and of income from one hundred to two hundred and fifty thousand dollars; (3) the

exemption of the personal estate of the corporations named from general taxation and from collateral inheritance tax; (4) the exclusion of certain corporations which (although organized for quasi charitable purposes) derived an income or profit from capital or otherwise, and dividend paying corporations from the benefit of the provision granting exemption from taxation.

It seems very plain that the purpose of the original act of 1889, and of the amending act of 1890, was to regulate and define the corporate powers and privileges of domestic corporations only. They are acts conferring and regulating corporate capacity and privileges. The power of corporations to take and hold property is a corporate power and depends upon their charters. The law of this state cannot enlarge or change the powers of a foreign corporation. They are solely those given by the law of the domicile. Foreign corporations are permitted by comity to exercise their powers within this state, when not in contravention of our statutes or public policy. Statutes have been framed from time to time permitting such corporations to hold property here. The statute of 1887 (Chap. 450) which authorizes corporations organized under the laws of other states, doing business in this state, to hold necessary real estate herein, is an example. But such enactments do not change, modify or enlarge the powers of corporations given by the state which created them. They are simply enabling statutes authorizing such corporations to exercise their charter powers in this jurisdiction. The question now presented is the same as would have arisen under the original statute of 1889, if a foreign corporation while that statute was in force had claimed the right to take and hold real property within this state of the value of two million dollars. It is scarcely possible to conceive that there could have been in the case supposed a serious question that the statute applied to foreign corporations or was intended to give to such corporations the powers claimed. Such legislation would be unprecedented. Under the act of 1890, if foreign charitable corporations are within its purview, they may

acquire and hold in this state real estate to the amount of three million dollars, or property yielding an annual income of two hundred and fifty thousand dollars, and are placed on the footing of domestic corporations of the same character. One of the amendments made by the act of 1890, to the act of 1889, was the insertion after the words "may take and hold," the words "in its own right or in trust for any purpose comprised in the object of its incorporation," so that as the act now stands, giving it the construction claimed by the appellants, real property of a value, or yielding the income specified in the act, may be acquired and held here by any foreign corporation of the class mentioned, upon any trust authorized by its charter, however much such trust might contravene the policy of this state or our statutes regulating and defining trusts in real property. If the statute relates to domestic corporations only, there is no inconsistency. They derive their powers from this state and it is to be assumed that corporate powers will be granted with reference to the general policy of our laws.

Some stress is laid by the learned counsel for the appellants upon the words in the act of 1890, "nor to any gift to such corporation by grant, bequest or otherwise," at the end of the clause of exemption. The exemption clause commences with the words, "the personal estate of such corporation shall be exempt from taxation," etc. The words "grant, bequest or otherwise," may have been inserted at the end to cover grants or devises of real property. It is not necessary to decide whether this object was effected by the words used. But the emphasis is not we think to be placed on the words, "any such corporation," so as to strengthen the argument of the appellants that foreign corporations are comprehended in the statute.

We are of opinion that a statute of a state granting powers and privileges to corporations must, in the absence of plain indications to the contrary, be held to apply only to corporations created by the state and over which it has the power of visitation and control. Such is the natural interpretation of such legislation, in the absence of a contrary

intention appearing on the face of the act. The legislature in such cases is dealing with its own creations, whose rights and obligations it may limit, define and control. In the case of *White* v. *Howard* (46 N. Y. 144), a question arose as to the construction of section 3, 2 Rev. St., p. 57, which declared that "no devise to a corporation shall be valid unless such corporation be expressly authorized, either by its charter or by a statute, to take by devise," as applied to a devise to a foreign corporation authorized by its charter to take by devise. The devise was held to be invalid on the ground, among others, that the words "by its charter or by statute" in the section quoted, referred to a charter or statute of this state. GROVER, J., delivering the opinion of the court, said: "Creating or chartering corporations involves an exercise of the legislative power. They may be created by a particular statute granting the charter, or be organized by virtue of general statutes prescribing the mode, specifying the powers and privileges to be enjoyed. In either mode the corporation is, in a legal sense, created by statute; and where section 3 provides that no devise to a corporation shall be valid unless such corporation be expressly authorized by its charter or by statute to take by devise, it is equally clear that such charters were only intended as were granted by a statute of this state, or organized under a general statute of the state, as it is that by the words 'by statute,' a statute of the state was intended. Any other construction would work a complete revolution of the policy of the state."

The claim that the test of liability of foreign corporations to a legacy tax is the liability of a domestic corporation of the same character to the payment of such a tax, and that if one is exempt, the other is exempt also, has, we think, no foundation. In both cases the question is the same, has the statute made the legacy taxable. In the *Catlin* case exemption of both the domestic and foreign corporations was claimed under the Revised Statutes alone. If they did not exempt the domestic corporation, concededly they did not exempt the foreign one, and, for convenience in deciding the case, both were

regarded as domestic corporations. In *Hollis* v. *Drew Theological Seminary* (95 N. Y. 166) the question was whether the two months limitation in the 6th section of chapter 319, Laws of 1848, which section prohibited bequests to " any corporation formed under this act," applied to a bequest to the defendant, a corporation of another state, and it was held that it did not, (1) because the prohibition was confined to bequests to corporations organized under the act of 1848, and (2) for the reason that no public policy existed which required its extension to bequests to foreign corporations. The absence of such a general policy was indicated by the numerous corporations in the state organized after the act of 1848, as to which the power of testators to make bequests was not subject to the restriction in that act.

The argument that gifts for the promotion of charity, education and religion should be encouraged and should not be diminished by exactions of the state, presents a moral and political rather than a judicial question. It is the duty of courts in the interpretation of statutes to declare the law as it is, and the interests of society are best subserved by a close adherence by courts to what they find to be their plain meaning, neither narrowing the application on the one hand, nor extending the meaning on the other, to meet cases not specified, which may seem to be within the reason of the law. A general law of the state prohibiting corporations from exercising particular powers will operate upon foreign corporations, not because the act binds such corporations *ex proprio vigore*, but for the reason that their exercise of such powers here would violate the public policy of the state indicated by the general restraint imposed upon our own corporations.

It is the policy of society to encourage benevolence and charity. But it is not the proper function of a state to go outside of its own limits and devote its resources to support the cause of religion, education or missions for the benefit of mankind at large. The argument may have force, that the state might, consistently with its proper function, give immunity from taxation to some of the foreign corporations engaged in

the work of education or charity. But, however, this may be, we are convinced that the statute of 1891 has no application to foreign corporations, and having reached that conclusion our duty is ended.

Upon the view we have taken the act, Chap. 376, of the Laws of 1877, conferring upon the defendant, The American Board of Commissioners for Foreign Missions, a limited privilege of taking and holding real and personal property in this state, does not relieve that corporation from a legacy duty. That was an enabling statute merely. The corporation remained a foreign corporation as before, but possessing in this state a privilege granted by that statute.

Our conclusion is that the judgment below should be affirmed.

All concur.

Judgment affirmed. _____