In the Matter of the Estate of JULIA A. SMITH, Deceased.

*Section 2 of chapter 399 of 1892 — foreign religious corporations not exempt there-*
*under — the statute applies to domestic corporations only.*

The provisions of section 2 of chapter 399 of the Laws of 1892, exempting a per-
son who is a bishop, or a religious corporation, from the tax imposed by such
act, do not apply to foreign religious corporations.

A statute of the State of New York granting powers and privileges to corpora-
tions must, in the absence of plain indications to the contrary, be held to apply
only to corporations created by the State of New York and over which it has
the power of visitation and control; and although it is the policy of society to
encourage benevolence and charity, it is not the proper function of the State
of New York to go outside of its own limits to devote its resources to the sup-
port of the cause of religion, education or missions for the benefit of mankind
at large.

APPEAL by R. Titus Coann, as county treasurer of Orleans
county, from that portion of the decree of the Surrogate's Court of
the county of Orleans, entered in Orleans County Surrogate's Court
on the 20th day of July, 1893, which adjudges that certain societies
are exempt from paying the collateral inheritance tax as provided
in chapter 483 of the Laws of 1885, and the laws amendatory
thereof and supplemental thereto.

*E. B. Simons,* for Orleans county treasurer, appellant.

*D. W. Perkins,* for certain Massachusetts religious corporations,
respondents.

LEWIS, J.:

Mrs. Julia A. Smith, deceased, by her will, which was admitted to
probate by the surrogate of Orleans county on the 23d day of March,
1891, made bequests to three foreign missionary societies, namely,
the American Baptist Missionary Union, the Woman's American
Baptist Home Missionary Society, and the Woman's Baptist Foreign
Mission Society, to one the sum of $1,000, and to the others the
sum of $2,000 each. This proceeding was instituted before the
surrogate of Orleans county for the assessment and collection of
the collateral inheritance tax on such bequests. The learned sur-
rogate held and decided that the societies mentioned were not liable

for the legacy tax on the sums so bequeathed to them for the reason
that they were exempt from the payment thereof by the provisions
of section 2 of chapter 399 of the Laws of 1892. The treasurer
of the county of Orleans, who was a party to the proceeding,
appealed from the decree. Whether said societies are liable for the
tax is the only question presented for our decision, and that
involves the construction of our collateral inheritance statutes.
Chapter 483 of the Laws of 1885 was the first act passed providing
for such a tax. It was amended by several subsequent statutes.
A general law was passed covering the entire subject, being chapter
399 of the Laws of 1892, which took effect on the thirtieth day of
April of that year. The first section of the act provides for
imposing a tax of five per cent upon the transfer of any property,
real or personal, of the value of $500 or over, when the transfer is
by will, or by the intestate laws of the State, of any person dying
seized or possessed of the property while a resident of the State, or
when the transfer is by will, of property within the State, and the
decedent was a non-resident of the State at the time of his death,
except as otherwise prescribed in section 2 of the act. Section 2
provides for a tax of one per cent upon the property passing by
such transfer to the use of certain relatives of the deceased men-
tioned in the section. The following provision is contained in this
section : "But any property heretofore or hereafter devised or
bequeathed to any person who is a bishop, or to any religious cor-
poration, shall be exempted from and not subject to the provisions
of this act." The learned surrogate held that the institutions men-
tioned were in consequence of this provision exempt from the pay-
ment of the tax, and whether the construction given to the section
is correct depends upon whether the words " religious corporation "
includes the corporations of that character, foreign as well as domes-
tic. The language of the proviso is quite general, and says that
any property heretofore or hereafter devised or bequeathed to any
person who is a bishop, or to any religious corporation, shall be
exempt and not subject to the provisions of the act. We are not
referred to any reported case deciding this precise question. The
Court of Appeals in *The Matter of the Estate of Prime* (136
N. Y. 347) gave construction to the act, chapter 553 of the
Laws of 1890. The purpose of the latter act was to limit the

amount of property, as well as the income therefrom, which might be held by any religious, educational and other societies mentioned. There was a provision in the act that chapter 483 of the Laws of 1885, entitled An act to tax gifts, legacies and collateral inheritances in certain cases, and the acts amendatory thereof, shall not apply thereto, nor to any gifts to any such corporation by grant, bequest or otherwise. Certain foreign corporations were named in Prime's will as legatees, and they claimed exemption from the inheritance tax. It was held by the Court of Appeals that the statute had application to domestic corporations only, and did not include foreign corporations. While the question before us was not involved in the decision of the *Prime* case, the court very elaborately discusses the rights of foreign corporations under the statutes of our State, and enunciated a general rule of construction which would seem to fully cover the questions presented in the case at bar. Chief Justice ANDREWS in his opinion says: " We are of opinion that a statute of a State granting powers and privileges to corporations must, in the absence of plain indications to the contrary, be held to apply only to corporations created by the State, and over which it has the power of visitation and control. Such is the natural interpretation of such legislation in the absence of a contrary intention appearing on the face of the act. The Legislature, in such cases, is dealing with its own creations, whose rights and obligations it may limit, define and control." He further says: " It is the policy of society to encourage benevolence and charity. But it is not the proper function of a State to go outside of its own limits and devote its resources to support the cause of religion, education or missions for the benefit of mankind at large." The *Prime* case was decided by the General Term in April, 1892; it was appealed to the Court of Appeals and decided by that court in January, 1893.

The act of 1892, which we are considering, became a law April thirtieth of that year. The members of the Court of Appeals were undoubtedly aware of the provisions of the act of 1892, and may have intended, in laying down the doctrine for the construction of the statute above referred to, to establish a rule for the guidance of the courts in cases which might arise thereunder. The act of 1892 grants certain privileges to religious corporations, but as there is an absence of any plain indications in the act that it is intended to

apply to foreign corporations, we are inclined to hold that under the doctrine of the *Prime* case, the three societies mentioned are liable to the payment of the legacy tax. The decree of the surrogate appealed from should be reversed, and the proceedings remitted to that court, with directions to determine the amount of tax, to the payment of which the legatees mentioned are liable, without costs of this appeal to either party.

DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

Decree of the Surrogate's Court of Orleans county appealed from reversed, without costs of this appeal to either party, and proceedings remitted to that court to proceed therein.