child to have the use, custody and control of the one-sixth part of said estate for and during his natural life.

Third, Upon the death of any of his said children, he gives and bequeaths unto the heirs of the body of said child the said one-sixth part forever.

By the fifth clause of his will he directs as follows:

"Fifth, The part or share which any of my children shall be entitled to take a life interest of, in and to my estate, shall not in any way be liable to be seized, taken or in any manner incumbered by any old debt or claim against any or either of my said children."

It would appear from the evidence that the testator had advanced more or less money to the majority of his children; and while it might have been possible for the executors here to have recovered upon this note if an action had been brought before the Statute of Limitations had run, I do not think that under this provision of the will, I can allow the amount of this note to be taken from the life use which M. D. Munson has in the undivided sixth of testator's estate.

A decree may be entered accordingly.

---

Matter of KATE CONNELLAN, a Poor Person.

(County Court, Cattaraugus County, December, 1898.)

1. **Poor Law, chapter 225 of 1896 — County poor have no "settlement" — Effect of chapter 203 Laws of 1897.**

     The term "settlement" has no application to county poor, and hence the *status* of a poor person, who, while residing in a town of a county, has been supported by the county for many years, is not affected by the amendment to the Poor Law (Laws of 1896, chap. 225), made by chapter 203 of the Laws of 1897, and providing that a person who has gained a settlement in a town or city loses the same by a continuous residence elsewhere for one year.

2. **Same — Unless an inmate of an almshouse, a poor person, although supported by the county, may gain a settlement in a town by one year's residence there.**

     The enactment of section 41 of chapter 225 of the Laws of 1896 repealed by implication so much of the Revised Statutes (part I, chap. 20, tit. 1, § 30), as declared that no residence of any person as a pauper in

any town, while supported at the expense of any other town or county, should operate to give such pauper a settlement in the town where such actual residence may be had; and a poor person may now gain a settlement in and be chargeable to a town after a residence of one year therein although she is supported by the county, except in a case where the poor person is an inmate of an almshouse.

3. Same — Semble that county poor need not be sent to the almshouse.

Semble, that the law does not make it mandatory upon a county superintendent of the poor to send to the county almshouse a poor person who is being supported by the county.

APPEAL by the overseer of poor of the town of Salamanaca from a decision of the superintendent of poor of the county of Cattaraugus, which determined that the poor person is not a charge upon the county of Cattaraugus, but that she is a charge upon the town of Salamanca.

G. W. Cole, for town of Salamanca.

J. V. Goodwill, for county of Cattaraugus.

KRUSE, J.   The poor person has resided in the town of Salamanca, in this county, for about fifteen years, and during nearly this entire period of time has obtained relief as a poor person from the county of Cattaraugus, she having applied therefor and received aid before she had resided one year in the town of Salamanca. The superintendent of poor of the county had during the time stated paid her at the rate of $10 per month until September 1, 1898, at which time he discontinued furnishing relief to her, and notified her and the overseer of the poor of the town of Salamanca that further relief would not be furnished to her by the county. The overseer of the poor of the town of Salamanaca applied to the superintendent of poor to re-examine the matter, and he thereupon made the decision from which this appeal is taken.

In the county of Cattaraugus the distinction between county and town poor exists.   Until the revision of the Poor Laws in 1896 the support and maintenance of this poor person was properly chargeable to the county of Cattaraugus.   In that year the Poor Law, being chapter 27 of the General Laws, was enacted.   It had been the law for many years that no person could gain a settle-

.ment in any town without having resided therein for one year, nor could he gain such settlement while being supported at the expense of another town of the county; after gaining a settlement in a town he remained chargeable to that town until he gained a settlement elsewhere; but in 1897 by chapter 203 the legislature amended the Poor Law by adding in article 3 an additional section, 57, which provides that a person who has gained a settlement in a town or city loses the same by a continuous residence elsewhere for one year. In the stipulation of facts submitted to me, it appears that the superintendent based his decision upon this amendment and the decision of Judge Ross in Matter of Town of Onondaga v. City of Syracuse, 22 Misc. Rep. 265. I do not see, however, how that amendment or the decision of Judge Ross has any application to the present case, for the question under that amendment and involved in that decision, was whether the poor person had lost his settlement in the town of Onondaga, and gained it in the city of Syracuse by residing in that city one year, although during that time he had a settlement in and was supported by the town of Onondaga. Such is not the question involved in the case now being considered. It will be observed that the term " settlement " has no application to county poor; it is only when a person has no settlement in a town or city that he becomes chargeable to the county. Subdivision 2 of section 42 of the Poor Law (Laws of 1896, chap. 225), which relates to the support of the poor of the county, provides as follows: "2. If he has not gained a settlement in any town or city in the county in which he shall become poor, sick or infirm, he shall be supported and relieved by the superintendents of the poor at the expense of the county." It will thus be seen that a person who has not gained a settlement in a town or city, is supported at the expense of the county, except that section 90 of the Poor Law provides that persons who have not resided sixty days in a county are state poor. I do not see, therefore, how the status of this poor person has been affected by the amendment of 1897, which is section 57 of the Poor Law.

There is, however, another change contained in the general revision of the Poor Law, which I think fixes the settlement of this person in the town of Salamanca, and thus relieves the county from further expense of her support. Section 30 of the former Poor Law (2 R. S. m. p. 621) provides as follows: " But no residence of any person as a pauper in the the county

poor house or place provided for the support of the poor, or in any town while supported at the expense of any other town or county, shall operate to give such pauper a settlement in the town, where such actual residence may be had." The only provision upon that subject contained in the Poor Law, as revised in 1896, is as follows: " No residence of any such poor person in any almshouse, while such person, or any member of his or her family is supported or relieved at the expense of any other town, city, county or state, shall operate to give such poor person a settlement in the town where such actual residence may be." Section 41. It will be seen that except as regards residence in an almshouse, this provision has been eliminated. In determining the question of settlement as between towns, the provisions of section 40, which provide that a person who has gained a settlement shall so remain until he has gained a like settlement in some other town or city, and the provisions of section 57, which provide that such settlement may be lost by a continuous residence elsewhere for one year, should not be overlooked. But that question is not now here and need not be decided. The question here is between a town and the county and it seems quite apparent to me from the provisions of the statute to which I have called attention, that this poor person having resided in this town for a year and upwards, has gained a settlement in the town, and the expense of her support and maintenance is not longer chargeable to the county. It is urged upon the part of the town that under the law it is the duty of the superintendent to remove to the county almshouse a poor person requiring permanent support, and not having done so, the county cannot escape liability by permitting her to remain in the town of Salamanca. My attention is called to sections 20 and 23 and 46 and 47 of the Poor Law, which it is claimed makes it mandatory that all persons requiring permanent relief should be supported at the poorhouse. Assuming that such claim is well founded, I do not think that from the facts as disclosed in this case, it can be said that the superintendent failed in his duty by omitting to remove this poor person to the county almshouse. While it appears that this poor person has received assistance from the county for nearly fifteen years at the rate of $10 a month, it does not appear to what extent this has been the means of her support. It is not at all improbable that she has not received support from other sources; nor does it appear whether she has a family, nor whether her condition is liable to be permanent; and it is expressly disclaimed that

the superintendent has permitted her to remain in the town for the purpose of evading the law, although it is claimed that such would be the effect if her support is to be charged to the town in the future.

For many years it has been the practice of authorities having charge of the poor, to aid them in their support at their homes, instead of sending them to the almshouse. In many instances a poor person may be able to support himself to some extent and yet require aid from the public, or his relations to his family may be such that the best interests of the poor person as well as the public, require that he should receive aid at his home. And it may be apparent that this will be required to continue for some time, yet I am not aware that the law in such case makes it mandatory to remove such person to the almshouse.

I think the question of the permanent support of poor persons and of their removal to the county almshouse must necessarily be largely left with the authorities having that matter in charge. I think subdivision 12 of section 3 of the Poor Law expressly permits the superintendent to furnish support to this poor person at her home.

In enumerating the duties of the county superintendents of the poor, that subdivision provides that the superintendent shall " furnish relief to such of the county poor as may require only temporary assistance or are so disabled that they cannot be safely removed to the county almshouse, or to the county poor, who can be properly provided for other than at the county almshouse at an expense not exceeding that of their support at such almshouse."

I think the purpose of the provision in the Poor Law that a residence in the almshouse should not operate to give the poor person a settlement in that town, was to protect the town, in which an almshouse might be located, from becoming chargeable with the support of persons brought there and maintained at the expense of the county, and that in changing the provision in the former statute by omitting a like provision as regards persons being supported in a town at the expense of a county, the legislature in effect repealed the latter provision so that now a poor person may gain a settlement in a town or city after a residence of one year therein, although supported at the expense of the county, except where the person is an inmate of an almshouse.

While it is true that a repeal by implication is not favored, yet it is well settled that when a statute amends a former statute " so

as to read as follows," it of itself operates as a repeal by implication of inconsistent provisions of the former law and of provisions omitted in the amended law. Matter of Prime, 136 N. Y. 347. But beyond that, it will be seen that the Poor Law of 1896 expressly repeals all the provisions of the former law to which I have adverted. While this general revision is to be regarded as a continuing act under the decision of the courts, as well as under the Statutory Construction Law, yet as regards the omitted provisions, the revision must in effect be regarded as an absolute repeal.

I, therefore, reach the conclusion that the decision of the superintendent of poor must be affirmed; that the poor person has a settlement, under the law, in the town of Salamanca, and the expense of her support and maintenance is properly chargeable to that town and not to the county of Cattaraugus. Under the stipulation, however, no costs will be awarded.

Decision of superintendent affirmed, without costs.