IN THE MATTER OF THE APPLICATION OF THE CITY OF BUFFALO
FOR THE APPOINTMENT OF COMMISSIONERS TO APPRAISE CER-
TAIN LANDS PROPOSED TO BE TAKEN FOR EXTENDING THE
MAIN AND HAMBURGH STREET CANAL.

Under the provision of the charter of the city of Buffalo (chap. 519,
Laws of 1870), authorizing the city to take the fee of lands for corpo-
rate purposes, proceedings were instituted to take lands of a railroad
company, in accordance with a resolution of the common council.
Upon appeal from an order appointing commissioners, the General
Term held that the court at Special Term " had no authority to inquire
into any thing except the mere regularity of the proceedings and as to
who should be commissioners." *Held*, error; that a legal question was
presented, *i. e.*, as to whether, under the grant of power contained in
the charter, the city was authorized to appropriate the fee of lands held
by a railroad company, for public use, and acquired by the exer-
cise of the right of eminent domain, which question the court hearing
the application necessarily had the power to decide.
As to whether the charter confers the power to make such an appropria-
tion, *quære*.

(Argued March 28, 1876; decided April 4, 1876.)

THESE were appeals by the Lake Shore and Michigan
Southern Railroad Company, the New York Central and
Hudson River Railroad Company, the Buffalo, New York
and Erie Railroad Company, and the Erie Railway Com-
pany, from an order of the General Term of the Superior
Court of the city of Buffalo affirming an order of Special
Term appointing commissioners to appraise lands of the
appellants proposed to be taken in pursuance of a resolution
of the common council, for the purpose of extending thereon
the Main and Hamburgh street canal.   The facts as regards
the lands of the Lake Shore and Michigan Southern Railroad
Company are sufficiently stated in the opinion, and they were
similar in the other cases.

*A. P. Laning* and *E. C. Sprague* for the appellants.   The
General Term erred in refusing to consider the question
whether the common council of Buffalo had the power to

condemn the lands in question.   (Laws 1870, chap. 519, title
8; *Han. F. Ins. Co.* v. *Tomlinson*, 58 N. Y., 215; *N. Y. C.
and H. R. R. R. Co.* v. *Cunningham*, 13 Alb. L. J., 145;
*In re R. and S. R. R. Co.* v. *Davis*, 43 N. Y., 137, 147.)

*Frank R. Perkins* for the respondent.   The court· had
only authority to inquire whether all the steps required by
the statute had been taken, and as to who should be commis-
sioners.   (*Embury* v. *Connor*, 3 N. Y., 511.)   A mere ques-
tion of regularity is not appealable to this court.   (*King* v.
*Mayor*, 36 N. Y., 182; *N. Y. C. R. R. Co.* v. *Marvin*, 11
id., 276; *In re Broadway*, 49 id., 150.)

ANDREWS, J.   Section 1, title 8 of the charter of the city
of Buffalo (Laws of 1870, chapter 519) declares that the city
" shall have power to take lands for public buildings, for
parks, public grounds, squares, streets, alleys, fountains,
canals, basins, slips and other public waters, and for any
other corporate purpose or object."   The subsequent sections
of the title prescribe the proceedings to be taken to acquire
the title to lands which the common council shall determine
to take, for any of the purposes mentioned in the first sec-
tion, and for the appointment of commissioners to ascertain
the compensation to be made to the owners of the lands taken.
The commissioners are to be appointed by a court of record
upon the application of the city attorney, upon notice to the
parties interested, and the city is required, within one year
after the confirmation of the report of the commissioners, to
pay, to the persons to whom compensation shall have been
awarded, the compensation awarded to them respectively.
The eighteenth section declares that " upon making to the
respective persons the compensation awarded to them, or
pay the same into court, the fee of the lands shall vest in the
city."

Under this statute the city of Buffalo instituted proceed-
ings to take lands for the extension of the Main and Ham-·
burgh Street canal, from its present terminus .at Hamburgh

street to the Buffalo river, and the land proposed to be taken was a strip about two miles long and sixty feet wide. A part of the land sought to be taken was occupied by the Lake Shore and Michigan Southern Railway Company, a corporation which has succeeded to the rights of the Buffalo and State Line Railroad Company, and which latter company had acquired it by condemnation under the provisions of the general railroad act. The company has constructed upon the land, and were using several tracks, turnouts and switches, over which numerous trains passed daily. Upon the application for the appointment of commissioners these facts appeared, and affidavits were presented to the court on the part of the company, tending to show that it would sustain great injury if the land should be taken for the proposed canal, and these were met by counter affidavits on the part of the city, showing among other things that the tracks could be carried over the canal on bridges, without producing serious inconvenience to the company. Upon this state of facts, an important legal question was presented to the court, which is not free from serious difficulty, viz., whether, under the general grant of power contained in the charter, the city was authorized to appropriate for the purpose of the canal, the fee of lands held by the company under the statutes of the State, also for a public use, and acquired through the exercise of the right of eminent domain.

The question is one of statutory construction; whether the power given by the charter is to be construed as authorizing this proceeding in respect to lands so situated. The charter contemplates not the appropriation of the use simply of the lands taken under it, but the taking of the fee, divesting all existing titles and interests, and vesting in the city upon compensation made, an absolute and unqualified title. This question the court hearing the application necessarily had the power to decide. If the case presented was not within the law, commissioners could not legally be appointed. Assuming that the court could not review the judgment of the common council as to the necessity for taking the lands,

or their discretion in determining upon the plan or extent of the improvement, it had power to inquire and decide whether it could act at all upon the application. The learned judge at Special Term did consider the question, and in an elaborate opinion held that the charter conferred the power claimed by the city to take the lands of the company for the improvement, and made an order appointing commissioners. The company appealed from the order to the General Term, and that court affirmed it without considering the question decided at the Speical Term, on the ground that the judge at Special Term " had no authority to inquire into any thing except the mere regularity of the proceedings, and as to who should be commissioners."

In this the court were in error. The General Term has not considered the question now presented, but declined to pass upon it, upon an erroneous construction of the power of the Special Term, and of its own power as a court of review. The case should be remitted to the General Term, to the end that this question may be there considered and decided. We express no opinion upon it. We cannot properly do so in the present position of the case.

The same disposition is made of the appeals by the other appellants, The New York Central and Hudson River Railroad Company, Erie Railway Company, and Boston, New York and Erie Railroad Company.

All concur.

Order reversed, and case remitted.