The city of Buffalo, proceeding under chapter 62 of the Laws of 1853, entitled "An act to regulate the construction of roads and streets across railroad tracks," procured an order for a writ of peremptory mandamus from the Special Term, directing the defendant company to cause Ideal street in that city to be taken across its tracks, so as to be convenient for public travel, and cause all necessary embankments, excavations and other work to be done on its road for that purpose.
The Appellate Division unanimously affirmed this order, and an appeal was taken to this court.
The defendant railroad company interposes a preliminary objection to the hearing of the appeal upon the merits, which will be first considered.
It is insisted that chapter 62 of the Laws of 1853, under which this proceeding was instituted, was repealed by implication by chapter 754 of the Laws of 1897, entitled, "An act to amend railroad law, and the act amendatory thereof, relative to grade crossings," as the latter act contains no saving clause.
The act of 1897 was passed May 22d 1897, and went into effect July 1st of that year. This proceeding was argued at Special Term after the law of 1897 was passed, but was not *Page 574 
decided until September 22d 1897, two months after it went into effect.
It is argued on behalf of the city of Buffalo that the provisions of the Statutory Construction Act (Ch. 677 of the Laws of 1892) prevent the repeal of the act of 1853, and that the court below had jurisdiction to issue the writ under review.
We are of opinion that this position is well taken. The Statutory Construction Act is entitled, "An act relating to the construction of statutes constituting chapter one of the general laws." Section 1 reads: "This chapter shall be known as the Statutory Construction Law, and is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given by this chapter."
We thus have in this chapter general rules laid down by the legislature for the construction of every statute, subject to certain clearly-defined exceptions.
Turning to section 31 of the act, we find therein, among other things, this provision: "The repeal of a statute or part thereof shall not affect or impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected; and all actions and proceedings, civil or criminal, commenced under or by virtue of any provision of a statute so repealed, and pending immediately prior to the taking effect of such repeal, may be prosecuted and defended to final effect in the same manner as they might if such provisions were not so repealed."
These provisions are general in character and apply to all future legislation. The contention that they apply only to the acts reported by the statutory revision commission cannot be maintained, as the legislative intention to the contrary is clear. *Page 575 
There is nothing in People ex rel. Forest Commission v.Campbell (152 N.Y. 51) that restricts in any way the general application of the Statutory Construction Act.
In that case we were considering certain work of the statutory revision commission and the effect of the Statutory Construction Act thereon, and what was there written was limited to the facts presented.
It follows that the act of 1853 was not repealed by the act of 1897, so far as this proceeding is concerned, and the merits of the controversy are open to review on this appeal.
It is necessary to clearly apprehend the undisputed facts presented by the record.
The relator proceeded to argument upon its petition and the opposing affidavits of defendant and demanded that a peremptory writ of mandamus issue.
The right to the writ, under these circumstances, must be determined upon the assumption that the averments in the opposing affidavits are true. The proceeding in this form is in the nature of a demurrer to the facts set up by the defendant. (People exrel. Tenth National Bank v. Board of Apportionment, etc.,64 N.Y. 627; People ex rel. Lewis v. Brush, 146 N.Y. 60; In reHaebler v. N.Y. Produce Exchange, 149 N.Y. 414; People exrel. Corrigan v. Mayor, etc., 149 N.Y. 215.)
The defendant's contention is that the undisputed facts show that its property across which it is proposed to carry Ideal street is held and used for storage, yard and depot purposes, and, being thus held and used, it cannot be taken under this proceeding.
The opposing papers of the defendant disclose the following facts:
In the handling and care of the freight traffic of the defendant, the New York Central and Hudson River Railroad Company, it maintains a freight yard lying northerly of Broadway and extending easterly into the township of Cheektowaga, containing about two hundred and fifty acres, and also a freight yard westerly of Bailey avenue, northerly of William *Page 576 
street and southerly of Curtis and Amity streets, containing about two hundred acres.
In these yards nearly all of the freight business in the city of Buffalo of the Central-Hudson and West Shore Railroad Companies is transacted. The yards are continuous from William street easterly to the city line, and embrace the property sought to be crossed by Ideal street.
All of this property from William street east to the city line, except the four main tracks of the defendant, is used exclusively for freight yard terminals and depot purposes. At the point where it is proposed to carry Ideal street across there are eight tracks extending from one yard to the other, a distance of about twenty-four hundred feet; the four northerly tracks are used exclusively, in connection with the two yards and as to a portion thereof, for the storing of cars, for the making up of trains, and for the transfer of trains from one yard to the other and from the West Shore to the Central and from the Central to the West Shore. The four northerly tracks are continually in use night and day during the busy seasons of shipment for the storing, handling, switching, transferring and assorting the freight of the two yards, and these tracks constitute the throat of the two yards, connecting the one with the other, and are simply a narrowing up of the two yards and a part thereof.
Any congestion of the freight business along these four tracks would tend in a great measure to cripple and paralyze the utility of the freight yards, as they are the only means of transferring, handling and exchanging the freight and traffic back and forth. The remaining four southerly tracks are main-line tracks — two used for passenger service and two for freight purposes, and over them passes the entire public traffic of the defendant.
It further appears that when a resolution was pending before the common council of relator, requiring defendant to carry the street in question across its property, the expediency of so doing was referred to the grade crossing commissioners of the city of Buffalo, who reported that there *Page 577 
appeared to be no real need of it, and it would be one of the most dangerous grade crossings in the city. It is also admitted that, at present, Broadway and Bailey avenue afford sufficient means for crossing the tracks of defendant near the point in question, and that the only proper method of conducting Ideal street across the property of the defendant would be by an under grade crossing. The defendant has hitherto entered into contracts for the abatement of grade crossings in the city of Buffalo at an expense of more than two millions of dollars.
We have thus set forth these undisputed facts at length, as they are controlling in leading us to the conclusion we have reached, that the property across which it is proposed to carry Ideal street is held and used for storage, yard and depot purposes, and cannot be taken under the act of 1853.
The city of Buffalo is before this court, admitting that all of this property from William street east to the city line, except the four main tracks of the defendant, is used exclusively for freight yard terminals and depot purposes.
This being so, it follows, as matter of law, that this proceeding cannot be maintained.
The act of 1853 (Ch. 62) has been repeatedly construed by this court, and its precise meaning is no longer an open question.
It permits the laying out of a highway across the tracks of any railroad without compensation to the corporation owning such railroad.
In Albany Northern R.R. Co. v. Brownell (24 N.Y. 345) this court held the act of 1853 constitutional, and that it did not violate the provision against taking private property for public use or impairing the obligation of contracts. The mere crossing of the track by a highway is not regarded as interfering with the vested property rights of the railroad company. In the case cited the highway was laid out not only across the track, but upon grounds which the company had acquired as sites for their station house, engine house, turntables, etc., and no provision was made for compensation. It *Page 578 
was held that the act of 1853 did not, in language or by implication, extend to the appropriation of such land to the purposes of a highway, and it did not fall within the policy which contemplated that the track of a railroad might be so used; that to run a highway through such grounds was to appropriate the portion covered by it exclusively for a public use. It was also pointed out that such land was improved land through which a highway cannot be laid out without an obligation to make compensation. (1 R.S. p. 514, §§ 58, 64.)
The act of 1853 was again before this court in Boston AlbanyR.R. Co. v. Vil. of Greenbush (52 N.Y. 510). CHURCH, Ch. J., in delivering the opinion, said: "The only debatable question is whether the track proposed to be crossed is such a track as is authorized by the act to be crossed without compensation. The `track' specified in the act may include one or more single tracks, but should, I think, be limited to the track used for public traffic, whether composed of one or more, including turnouts and switches, or, in other words, what may fairly be regarded as the roadway. Grounds upon which tracks are laid for storing cars, or exclusively for making up trains, are not embraced in the term `track.'" The learned judge then pointed out that, in the case before him, the finding of fact did not relieve the premises from the operation of the statute.
In Matter of Boston, Hoosac Tunnel and Western Ry. Co., etc. (79 N.Y. 64), this court, in construing the provisions of the Railroad Act of 1850 (Ch. 140, § 28, subd. 6), providing for one railroad crossing the tracks of another, approved the doctrine we are now considering, and held that it was not intended by the general language of the act to authorize the invasion of lands or buildings already appropriated to railroad uses which, in their nature, require an exclusive occupation, or which would be materially impaired by subjecting the land to the new use. It was there pointed out that such lands could not, according to the principles of our previous decisions, be condemned for a new and inconsistent public use, at least without express legislative authority for *Page 579 
thus changing the use. (Matter of Boston Albany R.R. Co.,53 N.Y. 574; Matter of City of Buffalo, 64 N.Y. 547; Matter ofCity of Buffalo, 68 N.Y. 171.)
In Prospect Park and Coney Island Railroad Company v.Williamson (91 N.Y. 552) this court again considered the act of 1853.
The plaintiff's road extended from Brooklyn to a seaside resort at Coney Island, and it was proposed to run a highway through its terminal grounds between the depot building and the beach, about seven hundred feet in length, on which were constructed railroad tracks extending to high-water mark, plank walks for passengers and various structures for their accommodation, convenience and pleasure.
In holding that the laying out of the highway was illegal, the doctrine was again announced that lands once taken for public use, pursuant to law, under the right of eminent domain, cannot, under general laws and without special authority from the legislature, be appropriated, by proceedings in invitum, to a different public use.
It is urged by the respondent that all the facts which are warranted by the evidence and are necessary to support the order are presumed to have been found by the trial judge, and as the Appellate Division have unanimously affirmed on questions of law, no question of fact is presented in this court. We are of opinion that this rule has no application where, under the demand for the peremptory writ of mandamus, all the allegations contained in the defendant's affidavits stand admitted. It is upon the facts as alleged by the defendant that this case must be decided. It is argued by respondent that if the four northern tracks are to be treated as the narrowing up of the two yards, constituting the throat thereof, and a part of the same, the result of a decision in favor of the defendant would be to enable a railroad company by indefinitely extending its tracks between distant points to improperly avail itself of the rule sought to be now applied. The answer is that each case must be decided upon its particular facts.
In the case at bar, it seems to us very clear that the two *Page 580 
freight yards in question, containing four hundred and fifty acres, are necessarily operated as one yard under the facts disclosed, and that the four northern tracks are neither in fact nor in law a part of the roadway. They are not turnouts or switches as those terms are understood by railroad men, and their precise use is made apparent by the facts to which we have already adverted.
The further point is made by the city that the defendant is estopped from questioning relator's rights in the premises by reason of the fact that it has on two occasions paid assessments imposed upon its property for the paving of Ideal street.
This was a mere local assessment against adjoining landowners, including the defendant, and necessarily dealt with the street as it then existed. The payment of these assessments did not estop the defendant from invoking any legal remedy open to it when proceedings were subsequently instituted under the act of 1853 to conduct the street across its property.
The order appealed from should be reversed, with costs.
All concur.
Order reversed.