CHARLES M. STONE, Respondent, *v.* THE BOARD OF SUPERVISORS OF BROOME COUNTY et al., Defendants.

THE TOWN OF UNION et al., Appellants.

BRIDGES — COUNTY LIABILITY IN AID OF TOWNS, WHEN NOT AFFECTED BY AMENDMENT OF HIGHWAY LAW. The liability of a county to aid towns in the construction and maintenance of free public bridges, when the annual expense therefor in any town exceeds one-sixth of one per centum on the assessed valuation of the taxable property of the town, by the payment of not less than one-third of such excess, imposed by the Highway Law (L. 1890, ch. 568, § 130), but omitted from the amendatory act of 1895 (Ch. 416), is not affected thereby as to a bridge completed twenty-six days before the amendatory act went into effect, where nothing upon the face of the act indicates that the legislature intended to give it a retroactive effect. The rights of the towns are also preserved by section 31 of the Statutory Construction Law (L. 1892, ch. 677), providing that the repeal of a statute or a part thereof shall not affect any accrued right.

*Stone* v. *Bd. of Suprs. of Broome Co.*, 32 App. Div. 631, reversed.

(Submitted January 10, 1901; decided February 26, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 26, 1898, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. C. Moody* for appellants. The county of Broome having become obligated to pay to the towns of Union and Ves-

tal a certain proportion of the expenses for the construction of this bridge, such obligation could not be abrogated by the amendment of section 130 of the Highway Law, by striking from the section that portion providing that the county should pay a share of such expense. (*Markey* v. *Queens County*, 154 N. Y. 675; L. 1893, ch. 545; L. 1894, ch. 66; L. 1894, ch. 667; L. 1896, ch. 309; L. 1896, ch. 576; L. 1896, ch. 678; *R. & C. T. R. Co.* v. *Joel*, 41 App. Div. 43; *Spaulding* v. *Andover*, 54 N. H. 38; *Mt. Hope Cemetery* v. *Boston*, 158 Mass. 509; *Webb* v. *Mayor, etc.*, 64 How. 10; *People ex rel.* v. *Bd. of Suprs.*, 146 N. Y. 107; *Thacher* v. *Bd. of Suprs.*, 21 Misc. Rep. 271; Cooley on Const. Lim. [5th ed.] 440; *Bd. Education* v. *Blodgett*, 155 Ill. 441; *Kingsman* v. *City of Cambridge*, 121 Mass. 558.) The laws will not be held to be retroactive in their operation unless they are made so by express language. (*Matter of Prime*, 136 N. Y. 347; *People* v. *Wilmerding*, 136 N. Y. 363; *Bank of Metropolis* v. *Faber*, 150 N. Y. 200; *Quinlan* v. *Welch*, 141 N. Y. 158; *People ex rel.* v. *McCall*, 94 N. Y. 587; *Matter of Miller*, 110 N. Y. 216; *G. & W. Ry. Co.* v. *N. Y. C. & H. R. R. R. Co.*, 163 N. Y. 232.) The rights of the towns of Union and Vestal were protected by sections 1 and 31 of the Statutory Construction Law (Laws of 1892, ch. 677). (*People ex rel.* v. *Campbell*, 152 N. Y. 51; *Lazarus* v. *Met. El. Ry. Co.*, 145 N. Y. 581; *People* v. *England*, 91 Hun, 152; *People* v. *McNulty*, 93 Cal. 427; *State* v. *Smith*, 62 Minn. 540; *State* v. *Crusius*, 57 N. J. L. 279; *Harris* v. *Townshend*, 56 Vt. 716; *Close* v. *Noye*, 147 N. Y. 597; *Close* v. *Potter*, 155 N. Y. 145; *Cameron* v. *N. Y. & M. V. W. Co.*, 133 N. Y. 336.)

*Alex & A. W. Cumming* for respondent. The board of supervisors had no authority or jurisdiction to grant county aid to Union and Vestal on account of erecting the bridge across the Susquehanna river, and had no right to assess, levy or collect the same on the towns other than Union and Vestal, or cause the said amount to be paid over to either of said

towns. (*Matter of Rochester Water Comrs.*, 66 N. Y. 413 ; *Harbeck* v. *Pupin*, 123 N. Y. 119 ; *Matter of Livingston*, 121 N. Y. 94 ; *U. S. T. Co.* v. *N. Y., W. S. & B. Ry. Co.*, 101 N. Y. 486 ; *Bell* v. *Mayor, etc.*, 105 N. Y. 144 ; *Whipple* v. *Christian*, 80 N. Y. 527.) Chapter 416 of the Laws of 1895 divested the board of supervisors of all jurisdiction to levy, assess, collect or pay over to the defendant the tax in question. (*Matter of Rochester Water Comrs.*, 66 N. Y. 413 ; *People ex rel.* v. *Bd. of Assessors*, 84 N. Y. 610 ; *Matter of Prime*, 136 N. Y. 347 ; *People* v. *Wilmerding*, 136 N. Y. 363 ; *White* v. *Inebriates' Home*, 141 N. Y. 123 ; *People ex rel.* v. *Bd. of Suprs.*, 146 N. Y. 107 ; *Lyon* v. *Manh. Ry. Co.*, 142 N. Y. 298 ; *Vil. of Fort Edward* v. *Fish*, 156 N. Y. 363.) The repeal of section 130 of the Highway Law by chapter 416 of the Laws of 1895 was not affected by the Statutory Construction Law. (*Lazarus* v. *Met. El. Ry. Co.*, 145 N. Y. 581 ; *Town of Wirt* v. *Bd. of Suprs.*, 90 Hun, 205 ; *Thatcher* v. *Bd. of Suprs.*, 31 App. Div. 624 ; *People ex rel.* v. *N. Y. C. & H. R. R. R. Co.*, 158 N. Y. 334 ; *Matter of Vil. of Waverly*, 158 N. Y. 710 ; *People ex rel.* v. *Campbell*, 152 N. Y. 51 ; *Croveno* v. *Atlantic Ave. R. R. Co.*, 150 N. Y. 225 ; *Matter of Bronson*, 150 N. Y. 5 ; *Cameron* v. *N. Y. & M. V. W. Co.*, 133 N. Y. 336.)

Bartlett, J.    This action is brought by a taxpayer of the city of Binghamton, county of Broome, under chapter 301 of the Laws of 1892, to restrain the treasurer of that county from paying to the towns of Union and Vestal certain moneys which had been raised by taxation by the board of supervisors on behalf of said towns, under the Laws of 1890 (Chap. 568, § 130), which is known as the "Highway Law."

In August, 1894, the towns of Union and Vestal each held a town meeting for the purpose of considering and voting upon the question of raising and appropriating money for the construction of a bridge across the Susquehanna river at a point where it forms the boundary line between these two towns.

On the 24th of August, 1894, the commissioner of highways of each of the towns applied to the board of supervisors, then assembled in special session, for the authorization of each town jointly with the other to construct the bridge as above indicated, and to issue bonds therefor, payable as the board should prescribe, and requested the enactment of necessary legislation for that purpose. Each of these applications was referred to a separate committee, reported upon favorably and the board enacted necessary legislation authorizing the carrying out of the scheme. The act apportioned sixty-five per cent of the cost of the bridge to the town of Union and thirty-five per cent to the town of Vestal. Also regulated in detail the issuing of the bonds for the purpose of raising the necessary money and the building of the bridge.

Section twelve of this act of the board of supervisors reads as follows: "There shall annually be assessed and levied and collected upon the taxable property of each of said towns, the amount for which it is liable, at the same time and in the same manner as other town and county taxes are assessed, levied and collected, a sum sufficient to pay such town's yearly installments and interest falling due by the terms of the bonds of said town, as herein provided, on the first day of February thereafter, and the said sums so collected shall be applied to the payment of the yearly installments and interest so falling due."

The bonds were to be issued for the aggregate sum of fifty thousand dollars, payable in ten years, and the towns were authorized to borrow such sums thereon as might be necessary to pay the cost of erecting the bridge.

The board of supervisors appointed commissioners representing the towns and county and prescribed their duties as to the manner of issuing the bonds for the building of the bridge, the payment of the same, and the times and manner in which the bonds should be paid.

On the 22nd of September, 1894, the commissioners entered into a contract in writing with the Owego Bridge Company for the erection of the bridge in question for the sum of forty thousand dollars.

In December following, by virtue of proceedings duly had by the board of supervisors, the act was so amended and the contract so modified as to make the amount authorized for the building of the bridge fifty thousand dollars. The bonds were duly issued, and on the 26th of December, 1894, were sold and delivered to the Binghamton Savings Bank, $32,500 being bonds of the town of Union and $17,500 of the town of Vestal.

The referee found that the bridge was erected and paid for in accordance with the provisions of the contract, which required its completion by April 1st, 1895.

At this time the Highway Law (Chap. 568 of the Laws of 1890, § 130) provided as follows : " The towns of this state, except as otherwise herein provided, shall be liable to pay the expenses for the construction and repair of its public free bridges,   *   *   *; except that when the whole expense in any one town, for any one year, for the construction, care, maintenance, preservation and repair of its bridges, shall exceed one-sixth of one per centum on the assessed valuation of the taxable property of the town for that year, the county in which such town is located, shall then pay not less than one-third part of such excess."

By the Laws of 1895 (Chap. 416), which took effect April 26th, 1895 (twenty-six days after the completion of the bridge), the section above quoted was amended by striking therefrom the exception which created county liability. Notwithstanding this amendment of 1895, the supervisors of the respective towns made application to the board of supervisors for the payment by the county of the moneys alleged to be due them by reason of the provisions of section 130 of the Highway Law. The board thereupon proceeded duly to levy and collect from the county at large a tax of $15,793.34, being the aggregate sum alleged to be due to the two towns.

This action was commenced in January, 1896, to restrain the county treasurer from paying over said money to the towns. Upon this state of facts the referee found that the collection of the tax was without authority or jurisdiction and

void; that the injunction issued in the action should be permanent, and that the moneys in the hands of the county treasurer be restored to the city of Binghamton and the several towns in the county from which the same were collected. Judgment was entered accordingly, and the same was affirmed on appeal by the Appellate Division on a *per curiam* memorandum, as follows: " In view of the decision of the late General Term, fourth department, in *Town of Wirt* v. *Board of Supervisors* (90 Hun, 205), and the decison of the Appellate Division, fourth department, in June, 1898, reversing the case of *Thacher* v. *Board of Supervisors* (21 Misc. Rep. 271), we conclude to affirm the judgment in the present case."

This appeal presents the question whether section 130 of the Highway Law, as it existed prior to the first day of April, 1895, when this bridge was completed, conferred rights on the towns of Union and Vestal which were unaffected by the subsequent amendment of the section in question.

It is apparent that this section must have been deemed most important by the voters in the two towns when they assented to the building of this bridge. They might well have hesitated to expend so large a sum had it not been for the statutory provision which would relieve them from a portion of the expense.

The Highway Law of 1890 was a marked departure from the policy theretofore existing in this state. Prior to the enactment of that statute the burden of maintaining bridges in a county was imposed upon the towns, and this legislation was designed to divide the burden to some extent between the towns and the county.

In the case of *People ex rel. Root* v. *Board of Supervisors of Steuben County* (146 N. Y. 107) this court had occasion to consider the section of the Highway Law, now under discussion, prior to its amendment. Chief Judge ANDREWS, writing in that case, said: " It is conceded that section 130 enlarged the preceding existing liability in a county by imposing an absolute obligation upon the county to pay a proportion of the cost of a bridge across the border line of two towns in the

same county in case of excess of cost to each town beyond one-sixth of one per cent of the assessed valuation of the property therein."

In the case at bar the bridge in question was completed, and the statutory liability of the county of Broome became fixed twenty-six days before the amendatory act took effect; it, therefore, follows that unless it appears upon the face of the latter statute that the legislature intended to give it retroactive effect, it has no bearing upon the rights of the towns against the county. An examination of the statute in question discloses no such intention. (Chap. 416, Laws of 1895.)

The rule has long been settled in this state that neither statutes nor their amendments have retroactive force or effect unless the intention is clearly indicated upon their face. (*People ex rel. Newcomb* v. *McCall*, 94 N. Y. 587, 590; *Matter of Estate of Miller*, 110 N. Y. 216, 223; *Matter of Estate of Prime*, 136 N. Y. 355; *Geneva & Waterloo Ry. Co.* v. *Fall Brook Ry. Co.*, 163 N. Y. 228, 232.)

The Statutory Construction Act (Laws of 1892, chap. 677, § 31) is also applicable to the present situation. That section provides in part as follows: "The repeal of a statute or part thereof shall not affect or impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected; and all actions and proceedings, civil or criminal, commenced under or by virtue of any provision of a statute so repealed, and pending immediately prior to the taking effect of such repeal, may be prosecuted and defended to final effect in the same manner as they might if such provisions were not so repealed." (*People ex rel. City of Buffalo* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 570; *Village of Champlain* v. *McCrea*, 165 N. Y. 264.)

It follows that the county of Broome is liable to the towns of Union and Vestal in the premises under the provisions of section 130 of chapter 568, Laws of 1890, and that this

liability was in no way affected by the amendatory act. (Chap. 416, Laws of 1895.)

The briefs of the learned counsel are largely devoted to the discussion of the question, whether, even if the statute of 1895 had a retroactive effect, the towns were not vested with contractual rights which could not be impaired or destroyed by the legislature. This question is not presented and we express no opinion in regard to it.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

Parker, Ch. J., O'Brien, Haight, Martin and Vann, JJ., concur ; Landon, J., not sitting.

Judgment reversed, etc.