In re WRIGHT'S ESTATE.   (No. 6256.)

(Supreme Court, Appellate Division, First Department.  December 11, 1914.)

1. TAXATION (§ 861*)—TRANSFER TAX—REPEAL OF STATUTES—"INTANGIBLE PROPERTY."

Tax Law (Consol. Laws, c. 60) § 220, imposed a tax upon the transfer of property by will or intestate law, where the property was within the state and the decedent was a nonresident at his death. Section 222 provided that such tax should be due at the time of the transfer, except that where the transfer was upon any contingency, by reason of which the fair market value could not be ascertained at the time of the transfer, the tax should become due when the persons beneficially entitled thereto should come into actual possession or enjoyment thereof. By Laws 1911, c. 732, section 220 was amended so as to limit the tax on property of a nonresident to tangible property, and "intangible property" was defined to include stocks and bonds. A nonresident testator, who died prior to the time the amending act took effect, bequeathed in trust to his executors his interest in certain stocks and bonds of domestic corporations, which had been bequeathed to testator in the event that his brother should die without issue. The original appraisement of testator's estate for the transfer tax did not include his interest in those stocks and bonds, but that was left to be determined after the death of the brother. The brother died after the death of testator, and after the amending act became effective, and the state sought to collect the transfer tax on that property from the legatees. *Held* that, the repeal of the provision for the taxation of intangible property of nonresidents having become effective before the tax became due and payable, that tax could not thereafter be collected.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1676; Dec. Dig. § 861.*

For other definitions, see Words and Phrases, First and Second Series, Intangible Property.]

2. TAXATION (§ 862*)—TRANSFER TAX—REPEAL—AMENDING ACT.

Where the amending act (Laws 1911, c. 732) stated that it amended Tax Law, § 220, so as to read as thereinafter stated, it thereby clearly repealed all provisions in the section inconsistent with it as re-enacted.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1677; Dec. Dig. § 862.*]

3. TAXATION (§ 862*)—TRANSFER TAXES—REPEAL OF STATUTE—GENERAL SAVING CLAUSE.

General Construction Law (Consol. Laws, c. 22) § 93, providing that the repeal of a statute or part thereof shall not affect or impair any act done, offense committed, or right accruing, accrued, or acquired prior to the time the repeal takes effect, does not authorize the collection of the transfer tax imposed by Tax Law, § 220, upon intangible property of a nonresident testator, which, under section 222, was not due and payable until after the provision for such tax had been repealed by Laws 1911, c. 732.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1677; Dec. Dig. § 862.*]

Hotchkiss and Laughlin, JJ., dissenting.

---

Appeal from Surrogate's Court, New York County.

Proceedings for the collection of the transfer tax upon the estate of Charles F. Wright, deceased. From an order of the surrogate, dismissing an appeal from the appraisers and fixing the amount of the tax, the executors appeal. Reversed, and proceeding dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Edward P. Lyon, of New York City, for appellants.

Ellwood M. Rabenold, of New York City, for respondent.

INGRAHAM, P. J. Charles F. Wright, a resident of the commonwealth of Massachusetts, died on the 27th day of December, 1909, leaving a last will and testament, which was duly admitted to probate in the commonwealth of Massachusetts and letters testamentary issued thereon. At the time of the death of the testator there was in existence a certain trust, which had been created by the will of the testator's mother, Mary E. Wright. By that will one-half of her estate was given to her trustees, in trust to pay the income to William J. Wright during his natural life and upon his decease to his children, but in default of children his executors were directed to pay over the entire trust estate to her son Charles F. Wright, the testator in this proceeding. The securities in which this trust were invested consisted of 1,630 shares of the American Telephone & Telegraph Company, 39 shares of the General Electric Company, and $10,000 in bonds of the American Telephone & Telegraph Company; these corporations being organized under the laws of the state of New York. By the seventh clause of the testator's will he disposed of this property, to which he would be entitled upon the death of his brother William J. Wright without issue, to his executors in trust to pay the income thereof semiannually to Georgianna B. Wright, who was the wife of his brother William J. Wright, if she survived him during her natural life, and upon her decease directed that the entire principal sum should form a part of the rest and residue of his estate and be disposed of as provided for in the thirteenth clause of his will. William J. Wright, who was a brother of the testator and entitled to a life estate in this property, survived the testator and died on December 17, 1912, without issue. On December 17, 1912, and after the death of William J. Wright, the trustees under the will of Mary E. Wright had filed a final accounting in the probate court of the county of Suffolk in the commonwealth of Massachusetts, and in accordance with the decree of that court delivered the securities of which the trust fund consisted to the trustees under the will of the testator in this proceeding, to be held in trust for the use of Georgianna B. Wright during her natural life, and in accordance with the will on her death the property to go to his daughter if she survived him.

It appeared that there was an appraisal to ascertain the amount of the tax payable to this state after the testator's death. Neither the report of the appraisers nor the order entered thereon is part of this record. The only reference to that appraisement is contained in a supplemental affidavit of the executors, who state that all stocks in

corporations of New York and all other property in any way comprising a part of the estate of Charles F. Wright, the testator, at the time of his decease, was duly considered by the state comptroller of New York, who assessed an inheritance tax thereon, which was paid to said state comptroller by the deponents, as executors of the will of Charles F. Wright, on or before June 20, 1911; but it does not appear in this record whether or not a tax was paid on the transfer of this residuary interest that the testator had under the will of his mother. The petition of the comptroller, however, states that said property or some part thereof is subject to the act in relation to taxable transfers of property, and that no payment of such tax has been made and no proceedings have been brought to fix and determine the same by the representatives of the said decedent. On this petition and answering affidavit of the executors the appraiser appointed by the surrogate fixed the value of the securities as of the 27th day of December, 1909, the date of the death of Charles F. Wright. On appeal to the surrogate the order fixing that tax was reversed, and the proceedings remitted to the appraiser for reappraisement as of the date of December 17, 1912, the date of the death of William J. Wright, who had a life interest in the property, and not of the date of the death of Charles F. Wright on the 27th day of December, 1909, the testator under whose will the title passed. At that date, however, the statute imposing the tax had been repealed as hereinafter stated. On that reappraisement the appraiser fixed the value of the property as of the date of the death of William J. Wright, the life tenant, and upon that appraisement the order was entered fixing the tax, and it was from that order that the appeal was taken.

The situation of this trust fund, therefore, at the time of the death of the testator, was that the trustees under the will of Mary E. Wright held certain property during the life of her son William J. Wright, who was then alive, with a remainder over to the children of William J. Wright, if any, and if he left no children then to pay the said trust fund to the testator, Charles F. Wright. William J. Wright having no children at that time, Charles F. Wright had a contingent remainder in the trust property. Charles F. Wright by his will disposed of this property by the seventh clause of his will, giving the property to trustees, the income to be paid to Georgianna B. Wright, the wife of William J. Wright, and after her death to Anna B. W. Moore.

[1] I agree with the comptroller's contention that what was taxable was the transfer of the property by the will of Charles F. Wright at the date of his death on December 27, 1909; but his right to dispose of this property was contingent upon William J. Wright dying without issue. Charles F. Wright disposed of his contingent interest in the trust property, and it undoubtedly passed under his will. By section 220 of the Tax Law (chapter 62 of the Laws of 1909), in force at the death of the testator, a tax was imposed upon the transfer of any property to persons or corporations not exempt by law from taxation:

"2. When the transfer is by will or intestate law, of property within the state, and the decedent was a nonresident of the state at the time of his death."

And by subdivision 7 the tax was at the rate of 5 per centum upon the clear market value of such property, except as otherwise provided in section 221, which does not affect this question. Section 222, however, provided that all taxes imposed by this article shall be due and payable at the time of the transfer, except as herein otherwise provided. Taxes upon the transfer of any estate, property, or interest therein limited, conditioned, dependent, or determinable upon the happening of any contingency or future event by reason of which the fair market value thereof cannot be ascertained at the time of the transfer as herein provided, shall accrue and become due and payable when the persons or corporations beneficially entitled thereto shall come into actual possession or enjoyment thereof. By these provisions of the statute a tax was imposed, but it did not accrue and become due and payable until after these sections were repealed. The Tax Law, however, was amended by chapter 706 of the Laws of 1910, passed after the death of the testator, but before the death of William J. Wright, and sections of the Tax Law were thereby "amended to read respectively as follows." By this act both sections 220 and 221 were amended in important particulars. These sections were further amended by chapter 732 of the Laws of 1911. That chapter amends section 220 by providing that, instead of imposing a tax at the rate of 5 per centum upon the clear market value of such property, "(7) the tax imposed hereby shall be upon the clear market value of such property at the rates hereinafter prescribed." Section 221 was also amended by providing for certain exceptions and limitations to religious or charitable corporations, and the Tax Law was further amended by adding to it a section, known as section 221a, imposing the rate of tax. This provided for a tax of a devise or a bequest to children, depending upon the amount of the devise or bequest, and also upon the transfer of the property to any persons or corporations other than those enumerated in paragraph 1 of the section. Section 243 of the Tax Law was also amended. It was there provided that the words "estate and property," as used in the article, should be taken to mean the property or interest therein passing or transferred to individuals or corporations, legatees, heirs, next of kin, grantees, donees, or vendees, and not as the property or interest therein of the decedent, grantor, donor, or vendor; that the words "intangible property" shall be taken to mean incorporeal property, including money deposited in banks, shares of stock, bonds, notes, credits, evidences of an interest in property, and evidences of debt. "The word 'transfer,' as used in this article, shall be taken to include the passing of property or any interest therein in the possession and enjoyment, present or future, by inheritance, descent, devise, bequest, grant, deed, bargain, sale or gift, in the manner herein prescribed." But, by subdivision 4, section 220, of the Tax Law, as amended by chapter 732 of the Laws of 1911, the tax upon property of a nonresident was expressly limited to a transfer by will or intestate law of tangible property within the state when the decedent was a nonresident of the state at the time of his death. And subdivision 4 of that section as thus amended imposed the

tax on the transfer of intangible property or tangible property within the state made by a resident, or tangible property within the state made by a nonresident by deed, etc.

Thus by the act as amended by chapter 732 of the Laws of 1911 there was no tax imposed upon this property, as it was, under the definition as prescribed by section 243 of the act as amended, intangible property. And this section as thus amended was in force at the time of the death of William J. Wright, and at the time of the transfer of this trust fund, which was held under the will of Mary E. Wright. It seems that up to the death of William J. Wright there was no transfer of the property in these shares of stock, because up to that time all that Charles F. Wright had was a right to the stock if his brother William J. Wright died without issue. Section 222 of the act, which remained in force, provided that the tax upon the transfer of any estate, property, or interest therein limited, conditioned, dependent, or determinable upon the happening of any contingency or future event shall accrue and become due and payable when the person or corporation beneficially entitled thereto shall come into actual possession or enjoyment thereof. Thus, with the statute in force at the time of the death of Charles F. Wright, a tax of 5 per centum was imposed, which, however, did not accrue and become due and payable until the death of his brother without issue. But before the death of his brother occurred this section appraising this tax of 5 per centum had been entirely repealed, and there was in force when the beneficiaries became actually entitled to the property no statute which imposed a tax. Thus the tax did not accrue and become due and payable until the statute imposing the tax had been repealed.

[2] Considerable stress is laid in the respondent's brief upon the original order of the surrogate taxing the estate of the decedent, and it is cited in respondent's brief; but I cannot find that that order is in the record, nor does it appear from the record that whatever interest the testator had in this property was not taxed at that time. The fundamental question is, as before stated: Where a tax is imposed, but does not accrue and become due and payable, can it be enforced after the statute imposing it has been repealed? There can be no question but what, when a law amends a former statute "so as to read as follows," it operates as a repeal by implication of inconsistent provisions in the former law and provisions therein omitted in the latter. In re Prime, 136 N. Y. 347, 32 N. E. 1091, 18 L. R. A. 713. See Lewis' Sutherland, Stat. Cons. §§ 282, 285, 346. In Mason v. Sargent, 104 U. S. 689, 26 L. Ed. 894, the question of the effect of a repeal of a statute imposing a tax was before the Supreme Court of the United States. A testator dying in 1867 left his property to his wife for life, with remainder to the plaintiff. The wife died in 1872, and in 1873 the internal revenue collector assessed the tax. The law, however, was repealed in 1870, and in that repealing act there was a saving clause which provided:

"All acts and part of acts relating to the taxes herein repealed, and all the provisions of said acts, shall continue in full force for levying and collecting all taxes properly assessed or liable to be assessed or accruing, under the

provisions of former acts, or drawbacks the right to which has already accrued, or which may hereafter accrue under said acts"

—with a further provision that:

"This act shall not be construed to affect any act done, right accrued, or penalty incurred under former acts, but every such right is hereby saved."

The court below held that the tax was properly exacted and collected, on the ground that it accrued to the United States before October 1, 1870, when the repealing act took effect and was thus within the saving clause. The Supreme Court of the United States, however, held otherwise, saying:

"The contention of the plaintiffs in error, on the other hand, is that, until the legacy itself became payable, the tax upon it did not become a claim in favor of the government; and as the legacy was vested in the widow during her life, and the payment of it was postponed until her death, which occurred June 17, 1872, after the repealing act had taken effect, no right that could be saved by the exceptions had at that time accrued. It is our opinion that the tax was illegally demanded and collected."

See, also, Clapp v. Mason, 94 U. S. 589, 24 L. Ed. 212.

[3] There was no saving clause in the amendatory statute of 1911; and it seems to me clear that without such a saving clause the right to either impose or collect this tax was destroyed by the repeal of the statute imposing the tax. Section 93 of the General Construction Law (chapter 27 of the Laws of 1909) provides:

"The repeal of a statute or part thereof shall not affect or impair any act done, offense committed, or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred, prior to the time such repeal takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted as fully and to the same extent as if such repeal had not been effected."

But I do not think that this provision affects this question. What is here preserved is a right accruing, accrued, or acquired, or liability, penalty, forfeiture, or punishment incurred, prior to the repeal. It seems to me in this case that by the express provision of section 222 of the Tax Law the tax could not then be ascertained, and it therefore did not accrue and become due and payable until the persons or corporations beneficially entitled thereto shall come into actual possession or enjoyment thereof. There was no—

"act done, offense committed, or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the  *  *  *  repeal."

The law had provided that a tax should be imposed but it should not accrue and become due and payable until a future time. Before that time arrived the statute imposing the tax had been repealed, and there was no provision then in force after the repeal by which the tax would ever accrue and ever become due and payable. In Mason v. Sargent, 104 U. S. 689, 26 L. Ed. 894, the act of Congress under which the tax was imposed and collected (section 124 of the act of June 30, 1864 [13 Stat. 223, c. 173]) imposed upon legacies or distributive shares of personal property exceeding the sum of $1,000 passing after the passage of the act from a decedent, either testate or intestate, in

the hands of an executor, administrator, or trustee, varying in rate as the party beneficially entitled was less or more remote in consanguinity. And section 125 of the same act as amended by Act July 13, 1866, c. 184, 14 Stat. 140, provided this legacy, tax, or duty—

"shall be due and payable whenever the party interested in such legacy or distributive share of the property or interest aforesaid shall become entitled to the possession or enjoyment thereof, or to the beneficial interest in the profits accruing therefrom."

Now here the tax was imposed at the death of the decedent, but to become due and payable when the party beneficially interested should become entitled to the possession or enjoyment thereof—this seeming to be in substantial accord with sections 220 and 222 of the Tax Law in force when the testator died. But it was held that a saving clause that all acts and parts of acts relating to the taxes therein repealed, and all provisions of said acts, should continue in full force for levying and collecting all taxes properly assessed or liable to be assessed or accruing under the provisions of former acts or drawbacks, the right to which had already accrued or which may thereafter accrue under said acts. The court held that the tax was illegally demanded and collected. In Clapp v. Mason, 94 U. S. 589, 24 L. Ed. 212, under the same act, it was said:

"It is manifest that the right does not accrue until the duty can be demanded; that is, when it is made payable—in other words, at the end of 30 days after becoming entitled to possession."

My conclusion, therefore, is that the repeal of sections 220 and 222 of the Tax Law by the amendments of chapter 732 of the Law of 1911 repealed this tax, and that the estate of the decedent was not liable therefor.

It follows that the order appealed from must be reversed, with costs to the respondent, and the proceeding dismissed, with costs.

SCOTT and DOWLING, JJ., concur.

HOTCHKISS, J. (dissenting). In the original taxation proceedings under the will of Charles, the appraiser reported the existence of the deceased's conditional interest under the will of Mary, dependent upon the death of William without issue, and it was ordered that further proceedings in the matter of the taxation of this interest be suspended until the determination of such event. By his will Charles specifically bequeathed this interest. By chapter 732, Laws 1911, going into effect July 21st of that year, the section (220) under which an inheritance tax against nonresidents on shares of stock had previously been imposed was amended so as to exclude that species of property, thus repealing the previous act in this regard. There was no repeal, however, of those portions of the law which provided the machinery for ascertaining the amount of, and for collecting, any tax theretofore imposed. It is contended by the appellants that, inasmuch as Charles died prior to William, nothing passed to his estate under the will of Mary. But it appears from the record that the appellants, as representatives of Charles, took and retained possession of the securities in question

claiming the same by virtue of the will. Under such circumstances they cannot now be heard to deny the title under which their possession rests.

The only other question arises out of the claim of the appellants that, inasmuch as the repeal of the statute on which the tax was based took place prior to the death of William, which determined the right of Charles, the right to collect the tax fell with the repeal. Section 220 of the Tax Law, on which the tax in question was based, imposes a tax on the "transfer" of property passing by will or intestacy. It has been long settled that the inheritance tax of this state is not a tax upon property, but upon the right of succession to property, and that the "transfer" occurs on the death of the testator, and not at the time when the devisee acquires his right to possession. Matter of Davis, 149 N. Y. 539, 44 N. E. 185; Matter of Sloane, 154 N. Y. 109, 47 N. E. 978. Also that the tax is to be determined by the law in force at the time of such death. Id. In Matter of Vanderbilt, 172 N. Y. 69, 64 N. E. 782, it was held that, under an amendment to the Tax Law taking effect in 1899, remainders, whether vested or contingent, were presently taxable at the highest rate which, on the happening of the contingencies provided for, could be imposed under the provisions of the act—now section 230. See, also, the Zborowski Case, post. Section 222 of the Tax Law is as follows:

"All taxes imposed by this article shall be due and payable at the time of the transfer, except as herein otherwise provided.".

By a subsequent clause it is provided that taxes upon the transfer of certain estates in expectancy dependent—

"upon the happening of any contingency or future event by reason of which the fair market value thereof cannot be ascertained at the time of the transfer as herein provided, shall *accrue and become due and payable* when the * * * persons * * * beneficially entitled thereto shall come into actual possession or enjoyment thereof."

It was under these latter provisions of section 222, and in pursuance of a course approved by this court, affirming the decision of the surrogate of this county (84 Misc. Rep. 342, 145 N. Y. Supp. 1101) in the Matter of Zborowski, 163 App. Div. 947, 148 N. Y. Supp. 1151, and before the reversal of our decision in that case, that the proceedings for the appraisal of the estate in question were suspended. In the Zborowski Case, 107 N. E. 44, the Court of Appeals held that future estates determinable upon lives *were* ascertainable by "deducting the value of the precedent estate, determined by the method and standard of mortality and value employed by the superintendent of insurance," and that the appraisal of the value of the expectant estate was not to be postponed under the provisions of section 222, which did not apply. It seems clear from the foregoing that at the time of the death of Charles his interest under the will of Mary was subject to tax, and that the amount of such tax was then ascertainable, and should have been ascertained and computed in accordance with the principles of the Zborowski Case, and should not have been postponed to await the death of William. In these circumstances, I think the right of the state to impose and collect the tax was preserved by sec-

tion 93 of the General Construction Law. People v. N. Y. C. & H. R. R. Co., 156 N. Y. 570, 51 N. E. 312; Village of Champlain v. McCrea, 165 N. Y. 264, 59 N. E. 83; Cameron v. N. Y. & M. V. W. Co., 133 N. Y. 336, 31 N. E. 104; O'Flynn v. Powers, 136 N. Y. 412, 32 N. E. 1085; Matter of Village of Le Roy, 35 App. Div. 177, 55 N. Y. Supp. 149; People v. Gilroy, 67 Hun, 323, 22 N. Y. Supp. 271; People v. England, 91 Hun, 152, 36 N. Y. Supp. 534.

The order should be affirmed, with costs.

LAUGHLIN, J., concurs.